# South & North Alabama Railroad Company *v.* Henlein & Barr.

*Action against Common Carrier for Damages to Freight.*

1. *Common carrier; liability for damages to freight; special contract limiting.*— *Held*, on the authority of the former case between the same parties (52 Ala. 606-15), that in a contract for the transportation of horses or mules by railroad. entered into between the company and the shipper, in consideration of reduced rates, and a free passage to the shipper or his agent on the train with the stock. the company may lawfully stipulate that the value of the animals at the time and place of shipment, not exceeding $150 for each, shall be the measure of recovery for any loss or damage: such a stipulation is just and reasonable, and may be necessary to protect the carrier against exaggerated or fictitious valuations. (MANNING, J., *dissenting.*)

2. *Same.*—On grounds of public policy, a common carrier is not allowed to stipulate for immunity against damage resulting from his own negligence.

3. *Recoupment of damages.*—The owner of live animals transported by railroad, when sued for the charges of transportation, may recoup damages sustained by reason of injuries to them through the carrier's negligence.

4. *Splitting entire cause of action.*—An entire contract, not payable in installments, can not be split up and made the foundation of two or more suits: if an action is brought on a part of it only, whether the plaintiff fails or succeeds, he can not afterwards maintain another action on it; and the same rule applies to a claim for damages, whether made the foundation of an action, or set up in defense of an action.

5. *Plea of res adjudicata.*—The owner of mules transported by railroad, being sued for the carrier's charges before a justice of the peace, by an assignee of the claim, set up in defense that one of the mules was injured through the negligence of the carrier, and sought to recoup his damages; but the justice rendered judgment against him for the full amount of the charges: *held*, that the judgment was a bar to a subsequent action by him against the carrier to recover such damages.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by the appellees, suing as partners, against the South & North Alabama Railroad Company, as a common carrier, to recover damages on account of injuries to a mule, which the plaintiffs had transported on the railroad from Nashville, Tennessee, to Montgomery, Ala-

bama, and which, as they alleged in their complaint, was injured while in the defendant's possession through negligence and want of care. The defendant pleaded, "in short by consent, the general issue, and former adjudication of the matter in controversy;" and issue was joined on these pleas.

On the trial, as the bill of exceptions states, "the evidence showed the shipment by plaintiffs, on the 29th October, 1872, of a car load of stock, consisting of twenty mules, under a written contract, as follows:" Said contract was dated the 29th October, 1872; was signed by the plaintiffs, and by the station agent of the Louisville and Nashville and Great Southern Railroad Company, on whose road the mules were to be transported to Decatur, where they were delivered to the defendant's connecting road, as stipulated in the contract; and contained the following (with other) stipulations: "Whereas the Louisville and Nashville and Great Southern Railroad Company, and connecting lines, transport live stock only at first-class rates, except when, in consideration of a reduced rate on car-load ($75), the owner and shipper assumes certain risks, specified below: now, in consideration of said railroads agreeing to transport the above described live stock at the reduced rate of $75 per car-load, and a free passage to the owner or his agent on the train with the stock, the said owners and shippers do hereby assume (and release the said railroad from) all injury, loss, and damage, or depreciation, which the animals, or either of them, may suffer in consequence of being weak, or escaping, or injuring themselves or each other, or in consequence of overloading, heating, suffocation, fright, viciousness, or of being injured by fire, or the burning of any material, while in the possession of the companies; and from all other damages incidental to railroad transportation, which shall not have been caused by the fraud, or gross negligence, of said railroad companies. And it is further agreed, that in case of accidents to, or delays of time, from any cause whatever, the owner and shipper is to feed, water, and take proper care of stock, at his own expense. * * And it is further agreed, that the owners and shippers, or his or their agents in charge of stock, shall ride on the freight train on which the stock is transported, and do assume (and release said railroad companies from) all risk of personal injury while upon or about the companies' trains. And it is further agreed, that should damage occur, for which the companies may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed, for a stallion or jack, $300; for a horse or mule, $150; cattle, $50; other animals, $25. And this agreement further wit-

[South & North Alabama R. R. Co. v. Henlein & Barr.]

nesseth, that said owner and shipper has this day delivered to said company the live stock above described, to be transported on the conditions, stipulations, and understandings above expressed, which have been explained to, and are fully understood by owner and shipper.

"The evidence showed that the plaintiffs were both in Nashville when the stock was shipped, and superintended the loading of the stock on a new car; that the stock arrived in Montgomery, on the said car, on the 1st November, 1872, at 8 A. M.; that the plaintiffs, or their agents, went over to the road, and finding the car with the stock on the road, near the defendant's stock-pen, and being unable to find the freight agent, W. G. Cocke, who was not at his office, some man in the defendant's employment unlocked the car, and drove the stock from it into the defendant's stock-pen, and plaintiffs' agents drove them over to a stable in town, without at the time paying the freight; that one of the plaintiffs observed, while the mules were yet in the car, and before it was unloaded, that some of the *slats* had been eaten by the mules, and kicked off, and broken, which slats formed the inclosure of the sides of the car, and that a spike was projecting from one of the broken slats, and that the mule mentioned in the complaint was injured on the side of the hock, and hobbled on three legs when driven to the stable with the others. The evidence showed, also, that said mule was in good condition when loaded, and was so seriously damaged by the injury to her hock as greatly to reduce her value, which, at the time of loading, was $225; also, that the stock having been taken by the consignees, the plaintiffs, without paying for it, the defendant demanded of its freight agent the charges mentioned in the contract, $75; and that he paid it to the defendant, and afterwards brought suit against the plaintiffs to recover it, as mentioned in the statement from the justice's docket, which was in evidence, as follows."

The cause of action in the suit before the justice (J. B. Fuller) was thus stated on his docket: "Wm. G. Cocke v. Henlein & Barr. The plaintiff claims of the defendants seventy-five dollars for work and labor done by the Louisville and Nashville and Great Southern Railroad for the defendants, to-wit, on the 30th day of *November*, 1872, at his request; which sum of money, with the interest thereon, is now due and unpaid, and is the property of the plaintiff." The justice's docket showed that he rendered judgment for the plaintiff, on the 3d January, 1873, for $75. "There was evidence, also," as the bill of exceptions states, "that the said Henlein & Barr appeared on the trial of said suit before the justice, and defended the suit, and introduced witnesses

to prove, by way of defense, the injury to said mule, but did not show the amount of damage to the value of said mule; and that after the rendition of said judgment by the justice, they agreed to pay said judgment, if said Cocke would pay the costs in said justice's court, which was done. There was evidence, also, that the defendant's road, from Decatur to Montgomery, was a part of the line over which the stock was to be transported, under the said contract above set out, and for which the said freight was to be paid; and that neither Moses Barr, nor any other agent of plaintiffs, travelled on the train by which the stock was carried. There was evidence, also, that the schedule time of through freight trains from Nashville to Montgomery, at the time of said shipment, was fifty-two hours, and from Decatur to Montgomery was forty-eight hours; and there was no evidence of the time of arrival at, or departure from Decatur. There was no other evidence as to the matters referred to in this bill of exceptions."

"Thereupon, the court charged the jury as follows: 'If you find, from the evidence, that the assignee of the railroad company brought suit in a justice's court for the amount of freight ($75), and that these plaintiffs set up in defense of that suit the injury done to the mule, amounting to about $225; then, as to the $75 thus litigated in the justice's court, the plaintiffs·are not entitled to recover in this suit. When a railroad company, in another State, undertakes to ship goods beyond its limits on other railroads, the liability they incur in respect of such undertaking is not that of a common carrier, but is only co-extensive with the contract of shipment That under the contract in evidence in this case, the fact of injury to the mule does not, of itself, afford a presumption of neglect by the defendant.'

"The court charged the jury, also, that the value put upon the mule in the printed receipt (or contract) was not the measure of damages, but they could ascertain its value from all the evidence in the cause, if greater than $150; and that plaintiffs were not entitled [limited?] to the amount mentioned in the printed receipt, as the agreed value, in estimating their damages. To this charge the defendant excepted, and then requested the court to give each of the following charges, numbered 2, 3, and 5, which were in writing, and which the court refused to give: '2. That the contract in evidence is not unreasonable on the part of the railroad company, if the jury believe the facts recited therein, and is the measure of the defendant's liability.' '3. That if the jury believe the contract was signed by the plaintiffs, then this signature is evidence of the truth of the recitals therein.'

372 SUPREME COURT [Dec. Term,

'5. That if the jury believe, from the evidence, that the defendant required of its agent payment of the freight for the car-load of mules, because of their delivery without collecting the freight from the plaintiffs; and that the said agent paid it, and brought the suit before Justice Nettles, referred to in the evidence, to recover it from the plaintiffs; and that said plaintiffs defended themselves before the justice, by offering evidence of the injury to the mule by the defendant in this suit; and that the justice rendered judgment against them, for the whole amount claimed as freight; then this judgment is conclusive, and plaintiffs can not recover in this suit for the same injury, or any part of the damages for it.'"

The refusal of each of these charges, and the charge given, to which exceptions were reserved by the defendant, are now assigned as error.

RICE, JONES & WILEY, for appellant.

SANFORD & MOSES, *contra.*

STONE, J.—In the case of the *North & South Alabama Railroad Co. v. Henlein & Barr*, 52 Ala. 606, the question of the right of a railroad to stipulate the measure and extent to which it is to be held accountable, in case of injury or destruction of live stock transported by it, was very fully considered. We there said : "If the measure of the liability thus fixed appear to be greatly disproportionate to the real value of the animal and the amount of freight received, we should not hesitate to declare it unjust and unreasonable. But, as the case is presented, it seems to have been intended to adjust the measure of liability to the reduced rate of freight charged, and to protect the carrier against exaggerated or fanciful valuations. We cannot, therefore, pronounce it unjust and unreasonable, and it is the measure of appellant's liability." That case was precisely like the present one, in all its material aspects, and we adhere to the rule there laid down. The result of this ruling is, that the judgment of the Circuit Court must be reversed, so far as the instruction bears on this point

2. The Circuit Court did not err, in charging the jury that the railroad company could not stipulate for immunity against damage resulting from its own negligence. The policy of the law, and the interest of commerce, forbid that.—*Steele v. Townsend*, 37 Ala. 247. The third charge asked and refused is a legal truism, and should have been given.—1 Greenl. Ev. §§ 23, 26, 211.

[South & North Alabama R. R. Co. v. Henlein & Barr.]

3. On a charge given, and one refused, a question of the indivisibility of contracts is raised. The substance of the court's ruling was, that although the making of the defense in the suit of *Cocke v. Henlein & Barr*, before Justice Nettles, was a defense, under the plea of former recovery, to the present action, yet such defense was partial, extending only to the sum of seventy-five dollars, the amount in controversy in that suit; and that the plaintiffs in the present action, on the facts hypotheticated, if found by the jury, could recover the balance of the damage sustained by them in the alleged injury to their mule. The defense in Justice Nettles' court involved the same alleged negligence, as that which is relied on for recovery in the present action. Cocke, the plaintiff in that action, was but the transferree, or beneficial owner, of the claim of the railroad for freight-charges on a lot of mules, of which the one in controversy constituted a part. The defendants, Henlein & Barr, had the legal right to make that defense in that action; and if they had established it to the satisfaction of the justice, they would, thereby, have defeated a recovery. This, on the doctrine of recoupment.— *Hatchett v. Gibson*, 13 Ala. 587. The justice had jurisdiction to try the issue thus raised, and he did try and determine it. The decision of Justice Nettles was, that Henlein & Barr had no legal cause of action against the railroad company, for the alleged injury to the mule; and Henlein & Barr permitted that judgment to stand. According to the statements of the bill of exceptions, it is still an unreversed judgment of a court of competent jurisdiction. The rule of law is, that an issue once tried and determined, before a court of competent jurisdiction, is conclusive, until reversed, of both law and fact involved in the issue, whenever it arises a second time between the same parties or their privies.—*Rakes v. Pope*, 7 Ala. 161; 1 Brick. Dig. 823, §§ 273, 274; 1 Greenl. Ev. §§ 522, 523; *Gould v. Evansville & Crawfordsville R. R. Co.*, 1 Otto, 526, and authorities cited; *Cromwell v. County of Sac*, Sup. Ct. U. S., October term, 1876.

4. It is well settled, that a single contract, unless it be payable in installments, can not be split up, and become the foundation of a plurality of suits; and if the owner of such claim or cause of action bring suit on a part of it, and either succeed or fail in such suit, he can not afterwards sue on the residue of the claim or cause of action. The reason is the simple, yet well-known proposition, that the law will not permit such splitting up of a single cause of action.—*Oliver v. Holt*, 11 Ala. 574; *O'Neal v. Brown*, 21 Ala. 482.

In the case of *Guernsey v. Carver*, 8 Wend. 492, two consecutive suits were brought on different parts or items of one

continuous, running account, the whole of which was con-
tracted before the institution of the first suit. On the plea
of tender, the first suit went off, at the costs of the plaintiff.
To the second suit, the defendant, among other defenses,
pleaded "a former suit for the same identical cause and
causes of action, and that such proceedings were had in such
suit that it was adjudged   *   *   that the plaintiff should go
thereof without day, and that defendant should recover his
costs of defense." The items for which the two several suits
were brought were in fact different. The court—Nelson, J.—
said : "If a plaintiff bring an action for a part only of an
entire and indivisible demand, the judgment in that action
is a conclusive bar to a subsequent suit for another part of
the same demand.   *   *   The whole account being due
when the first suit was brought, it should be viewed in the
light of an entire demand, incapable of division for the pur-
pose of prosecution. The law abhors a multiplicity of suits."
See, also, *Stevens v. Lockwood,* 13 Wend. 644; *Bendernagle v.
Cocks,* 19 Wend. 207 ; *Bunnel v. Pinto,* 2 Conn. 431.

The defense made by Henlein & Barr before Justice Net-
tles was recoupment. Such plea is in its very nature defen-
sive, and the party making it seeks only to cut out, or keep
back, a part, or the whole of the plaintiff's demand. Whether
such defense is a waiver or abandonment of all claim by
reason thereof, save that which abates or defeats plaintiff's
recovery, is not fully settled. This court, in *McLane v. Mil-
ler,* 12 Ala. 643, asserted the affirmative of the proposition ;
and declared that no action will lie for the recovery of a bal-
ance of a claim, a part of which has been used as recoup-
ment of damages in a former suit. *Britton v. Turner,* 6 N.
H. 481, decides the same thing. In Waterman on Set-Off,
this question is treated as unsettled, referring to *Mandel v.
Steel,* 8 Mees. & W 858.—See Waterman on Set-Off, § 531 ;
*Mason v. Heyward,* 3 Min. 182. We prefer to follow the lead
of *McLane v. Miller, supra,* and hold that, in such case, no
action can be brought for the residuum of a claim, a part of
which has been utilized by way of recoupment in a former suit.

5. Another principle is, perhaps, fatal to the plaintiffs'
right of recovery in the present action, if the statements of
the bill of exceptions be true. The defense they offered
before Justice Nettles, presented the same want of diligence,
and the same damage to the same property, as those set up
in the present suit. In that case, they were adjudged insuffi-
cient to bar a recovery. The claim thereby became *res judi-
cata,* and can not be the foundation of an independent suit.
*Wright v. Salisbury,* 46 Mo. 26 ; *Baker v. Stinchfield,* 57 Maine,
363 ; *Collins v. Bennett,* 46 N. Y. 490.

[Thweatt v. McLeod.]

In every aspect in which we can view this question, we hold that Henlein & Barr, by the defense they made before Justice Nettles, have tested the validity of their demand, and have consented to abandon all claim against the railroad, except that which they asserted in that action; and that, having failed in that defense, they have barred themselves of all right to maintain a suit on that claim, or any part thereof.

The judgment of the Circuit Court is reversed, and cause remanded.

MANNING, J.—For my views in respect to the first point above considered, I refer to the dissenting opinion delivered in the case between the same parties, in 52 Ala. Rep. 606.